626 A.2d 658

**AEGIS SECURITY INSURANCE COMPANY, Petitioner,**

v.

**Cynthia M. MALESKI, Acting Insurance Commissioner, Commonwealth of Pennsylvania, Insurance Department, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 1993.

Decided March 2, 1993.

Publication Ordered June 7, 1993.

Stephen L. Banko Jr., for petitioner.

Scott M. Schwartz, for respondent.

Before CRAIG, President Judge, and McGINLEY, J., and LORD, Senior Judge.

McGINLEY, Judge.

Aegis Security Insurance Company (Aegis) appeals from an order of Cynthia M. Maleski, Acting Insurance Commissioner (Commissioner) affirming the Pennsylvania Insurance Department's (Department) determination that Aegis's cancellation of a homeowner's policy issued to Charles F. and Sandra T. Cook (Mr. and Mrs. Cook) violated the Unfair Insurance Practice Act (Act).[1]

On October 31, 1991, Aegis sent to Mr. and Mrs. Cook a notice of cancellation informing them that their mobile home insurance would be cancelled effective 12:01 A.M. on December 5, 1991 because of an "[i]ncrease in hazard-dog bite." Notice of Cancellation, October 31, 1991; Reproduced Record (R.R.) at 2a. The notice of cancellation was issued following an incident where Mr. and Mrs. Cook's dog, Travis, bit a neighbor on the back.

Mr. and Mrs. Cook challenged Aegis' notice of cancellation. The Department determined that Aegis' cancellation of the insurance policy violated Section 5(a)(9) of the Act, 40 P.S. § 1171.5(a)(9) because there was "[n]o evidence provided to prove a substantial increase in hazard in the risk assumed by the company subsequent to the date the policy was issued." Department's Investigative Report/Order, December 4, 1991; R.R. at 5a. The Department directed Aegis to continue the policy with no lapse in coverage. The Commissioner affirmed, concluding that although "[t]he facts of this case would support a finding that an increase in hazard occurred under the Cook's policy based on the September 30, 1991 incident . . . [a] notice of cancellation that simply refers to [a] 'dog bite' without any identifying details, such as the date of the incident, does not satisfy Act 205." Commissioner's Decision, June 18, 1992, at 4 and 6.

On appeal Aegis contends that the Commission's order directing Aegis to cease and desist from cancelling Mr. and Mrs. Cook's insurance policy for failure to comply with the

1. Act of July 22, 1974, P.L. 589, as amended, 40 P.S. §§ 1171.1–1171.15.

requirements of the Act is not supported by substantial evidence and constitutes an error of law. Our scope of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. *Erie Insurance Exchange v. Commonwealth*, 129 Pa.Commonwealth Ct. 120, 564 A.2d 1312 (1989).

Section 5(a) of the Act, 40 P.S. § 1171.5(a) provides:

(a) "Unfair methods of competition" and "unfair or deceptive acts or practices" in the business of insurance means:

. . . .

(9) Cancelling any policy of insurance covering owner-occupied private residential properties of individuals that has been in force for sixty days or more ... unless ... there has been a substantial change or increase in hazard in the risk assumed by the company subsequent to the date the policy was issued. . . . No cancellation or refusal to renew by any person shall be effective unless a written notice of the cancellation or refusal to renew is received by the insured either at the address shown in the policy or at a forwarding address. Such notice shall:

. . . .

(iii) State the specific reason or reasons of the insurer for cancellation or refusal to renew.

Aegis contends that the notice sent to the Cooks complies with the requirements of Section 5(a)(9)(iii) of the Act. We agree.

In the present controversy, it can hardly be argued that the notice of cancellation failed to inform Mr. and Mrs. Cook of the basis of the cancellation. The notice stated that the reason for cancellation was as an increase in hazard due to a dog bite. Although the notice failed to state the date of the attack and the name of the dog involved, the record is clear that Mr. and Mrs. Cook were familiar with the incident that prompted Aegis to cancel their homeowner's insurance policy. The record reveals that after the dog bite Mr. and Mrs. Cook paid the victim's emergency and prescription bills. On October 1, 1991, Mrs. Cook filed an insurance claim by phone and

supplied the information concerning the dog attack to an agent of Aegis.[2] Also, Mr. and Mrs. Cook wrote to the Department following receipt of the cancellation notice and again set forth the facts that appeared in the property loss notice.[3] There is substantial evidence of record to support a finding that Mr. and Mrs. Cook were aware that their insurance coverage was being cancelled because Travis bit a neighbor on September 30, 1991, and that there was no confusion as to what "dog bite" meant in the notice.

Accordingly, we reverse the decision of the Commissioner.

## *ORDER*

AND NOW, this 2nd day of March, 1993, the order of the Insurance Commissioner in the above-captioned matter is reversed.

2. Gloria G. Macroglou filled out a Property Loss Notice based on the following information supplied by Mrs. Cook:
 About 11:00 a.m. on 09/30/91 Insured's dog, Travis, one-year old, bit David Vener, age 29, on David's back. Dog is a Beagle house dog. Hospital gave David Vener a shop [sic] and put a band aid [sic] on injury. This information was reported to Agent, Gloria Macroglou, by Mrs. Cook on 10/01/91 at 3:00 p.m.
 Property Loss Notice, October 1, 1991; R.R. 39a.

3. Mrs. Cook to the Department:
 Nov. 6, 1991
 The dog bite was not a malicious act, the person nipped and the dog (a beagle) often play. The person admitted to an employee of the insurance company that the dog did not mean to nip him, it just happened.
 I (Mrs. Cook) was the one who sent in the claim, not the person bitten.
 . . . .
 I think its unfair to cancel the insurance because of one claim ($146.81). That is why a person aquires [sic] insurance to protect what little they have.

 . . .
 P.S. The dog (Travis) is a house dog, all the others (beagles) are penned up.
 Letter from Mrs. Cook to Department, November 6, 1991; R.R. at 3a–4a.